**LOGAN LANES, INC., an Idaho Corporation, Appellant,**

v.

**BRUNSWICK CORPORATION, a Delaware Corporation, Appellee.**

**No. 21168.**

United States Court of Appeals
Ninth Circuit.

May 5, 1967.

---

L. Charles Johnson, Callis A. Caldwell, Johnson & Olson, Pocatello, Idaho, for appellant.

Louis F. Racine, Jr., Racine, Huntley & Olson, Pocatello, Idaho, Robert L. Stern, Miles G. Seeley, Ned Robertson, Martin, Wald, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., for appellee.

Before POPE, HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge:

This is a suit brought by Logan Lanes, Inc. to recover treble damages in the sum of approximately $600,000 from Brunswick Corporation (Brunswick) for the alleged violation of section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act (Act), 49 Stat. 1526 (1936), 15 U.S.C. § 13(a) (1964).[1] It arises from a sale of bowling lanes and related equipment by Brunswick to Utah State Building Board (Board), at lower prices than Brunswick charged plaintiff Logan Lanes, Inc., for similar equipment. The Board is an agency of the State of Utah. The district court granted summary judgment for Brunswick, and Logan Lanes appeals.

In its amended complaint, Logan Lanes made the following allegations of fact, among others: Brunswick is engaged in the manufacture and sale, in interstate commerce, of bowling lanes and equipment. Logan Lanes operates an establishment for bowling and billiards in Cache County, Utah. On October 5, 1959, Logan Lanes purchased from Brunswick sixteen bowling lanes and necessary related equipment, for a cash price of $13,-091.00 per lane.

Logan Lanes further alleged that, in March and April, 1964, Brunswick sold ten bowling lanes and related equipment of like grade and quality to the Board in the same county and state for $8,111.86 per lane. The bowling lanes and equipment sold to the Board were used in competition with Logan Lanes. Since 1964, Brunswick has continued to sell bowling equipment to the Board at a discount at from 17½ to twenty-five percent under the prices Brunswick charges Logan Lanes for similar equipment.

As a result of the indicated discrimination in prices, Logan Lanes alleged, it has not been able to compete successfully with the operation using the bowling lanes sold to the Board, because Logan Lanes must charge a higher fee for using its lanes. Consequently, the company alleged, it has sustained a loss of at least $200,282.78 which, trebled, amounts to $600,848.34.

Brunswick moved to dismiss the action upon the ground that the amended complaint failed to state a claim upon which relief can be granted. In opposition to the motion to dismiss, Logan Lanes filed six affidavits, and in support of the motion Brunswick filed three affidavits and several exhibits.

A number of additional facts are to be gleaned from the affidavits and exhibits. The bowling equipment purchased by the Board was installed in the Student Union Building on the Utah State University campus at Logan, Utah. The bowling facilities were primarily for the use of students, faculty and staff of the University, but were also used by members of the public. One use the students make of such bowling equipment is to fulfill physical education requirements at the University. All income from the Student Union bowling alleys is used to finance student activity programs, or goes into a fund for expansion and improvement of the University.

1. In its brief in this court, Logan Lanes also invokes section 2(c), (d) and (e), but we find nothing in the allegations of the amended complaint which would bring these subsections into play.

Members of a University bowling league using the Student Union bowling alleys were charged the student rate, which is one dollar for three games, as compared to $1.35 for three games at Logan Lanes' bowling alley. The management of the Student Union lanes has declined to limit use of that equipment to persons associated with the University.

An affidavit submitted by Brunswick asserts that from July, 1964, when the new lanes were installed, to March 31, 1966, there were 128,349 lines bowled at the Student Union. Of these, according to this affidavit, 125,415 were bowled by students, faculty, staff and guests, while 2,934 were bowled by others. According to affidavits submitted by Logan Lanes, however, no effort was made at the Student Union lanes to determine whether prospective customers were associated with the University.

In view of these affidavits and other materials filed in connection with the motion to dismiss, none of which were excluded, the trial court properly regarded the motion as one for summary judgment for defendant Brunswick.[2] Ruling that there was no genuine issue as to any material fact, the court granted Brunswick's motion to dismiss on these alternative grounds: (1) Brunswick's sale of bowling lanes and equipment to the Board is exempt from the application of section 2 (a) of the Act, 49 Stat. 1526 (1936), 15 U.S.C. § 13(a) (1964),[3] pertaining to

price discrimination, because that section was not intended to apply to sales made to a state; and (2) the sale in question is exempt from the application of section 2(a), because the Board's purchase of this equipment was a purchase of supplies for its own use by a university not operated for profit, within the meaning of 52 Stat. 446 (1938), 15 U.S.C. § 13c (1964).[4]

Logan Lanes questions each of these grounds.

We consider first whether summary judgment for Brunswick was correctly granted on the latter ground, namely, that by reason of the 1938 statute exempting from the operation of the Act, certain purchases by universities and other non-profit institutions, these sales by Brunswick to the Board are exempt from the operation of section 2(a) of the Act.

Logan Lanes argues that since this statute refers to "purchases" of supplies, this might imply that Congress meant to limit the exemption to the purchasing party, and not extend it to the party selling the goods to a non-profit institution.

For every purchase, however, there must be both a purchaser and a seller. It follows that if a particular purchase is exempt from the Act, both the seller and purchaser involved in that transaction are exempt. Moreover, the

---

2. See Rule 12(b), Federal Rules of Civil Procedure; Erlich v. Glasmer, 9 Cir., 374 F.2d 681, decided March 23, 1967.

3. "§ 13 Discrimination in price, services, or facilities—Price; selection of customers
"(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States * * * and where the effect of such discrimination may be substantially to lessen competition or tend to create a

monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: * * *."

4. The 1938 statute, as it appears in 52 Stat. 446, reads as follows:
"That nothing in the Act approved June 19, 1936 (Public, Numbered 692, Seventy-fourth Congress, second session), known as the Robinson-Patman Antidiscrimination Act, shall apply to purchases of their supplies for their own use by schools, colleges, universities, public libraries, churches, hospitals, and charitable institutions not operated for profit."

benefits in the form of lower prices which are expected to accrue to non-profit institutions by reason of this statute would be illusory if only the purchasing institution, but not the sellers thereto, were exempted. No seller would be able to give a non-profit institution the benefit of a lower price which was discriminatory under the Act, if such seller was not exempt from the sanctions of the Act in making the sale.

Logan Lanes also contends that "supplies" as used in the 1938 statute, means only items of stock, materials and provisions needed to carry on daily operations, and does not include such capital items as bowling lanes.

The word "supplies," as used in this statute, is not defined. In general usage the term is sometimes meant to apply in a restricted sense. As an example, the term may be used to designate substances that are consumed with their use, and which do not enter into, and become a physical part of, a finished product.

█ As used in this statute, however, we think the term "supplies" is used in a more general sense. It embraces anything required to meet the institution's needs, whether it is consumed or otherwise disposed of, or whether it constitutes, or becomes part of, a material object utilized to enable the institution to carry on its activities.

█ We reach this conclusion because we perceive no reason why, in granting such an exemption to nonprofit institutions, Congress would wish to distinguish between purchased articles which are to be consumed, and those which are not. The underlying intent of granting such an exemption was undoubtedly to permit institutions which are not in business for a profit to operate as inexpensively as possible. This intent would be substantially thwarted if the term "supplies" was given the restricted construction urged by Logan Lanes. It is axiomatic that courts strive to adopt that construction of a statute which best effectuates the legislative purpose. See Reich v. Webb, 9 Cir., 336 F.2d 153, 157.

Logan Lanes further asserts that there are genuine issues of material fact under the 1938 statute as to whether the purchases in question were made: (1) by a university not operated for profit, and (2) for its "own use." These respective questions, Logan Lanes states, arise: (1) because the materials purchased are used in a student-union building which may be self-sustaining and which may not be a part of the university, and (2) because, to an extent not clearly established in the pleadings and affidavits, the bowling equipment is used by members of the public. Logan Lanes argues, therefore, that a summary judgment should not have been entered by the district court because there were genuine issues as to material facts. See Rule 56(c), Federal Rules of Civil Procedure.

█ Our review of the record convinces us that there is no genuine issue of material fact as to these matters. It is undisputed that the Student Union Building is on the campus of Utah State University, that the bowling facilities are used by the students, faculty and staff of the University, and that one use the students make of this equipment is to fulfill physical education requirements at the University. It is also undisputed that all net income from these bowling alleys is used to finance student activity programs or the expansion and improvement of the University. Logan Lanes does not contend that any excess of revenue over expenses resulting from the operation of the bowling alleys, or of any other activity conducted in the Student Union Building or elsewhere on the campus, is distributed to any private person or company as a profit.

█ The only genuine issue of fact which appears to be in the case concerns the exact amount of public use of the bowling lanes. As noted above, Brunswick has presented affidavits tending to show that 125,415 lines were bowled by students, faculty, staff and guests, while 2,934 lines were bowled by members of the public. Logan Lanes, on the other hand, has presented affidavits tending to show that no effort was made at the

Student Union lanes to determine which customers were members of the public and which were not.

In view of all of the other circumstances referred to above, as to which there is no genuine issue of fact, we do not believe that the issue of fact concerning the exact amount of public use of the bowling lanes is material. Assuming that the public made substantial use of the University bowling facilities, we would still conclude that, within the meaning of the 1938 statute, the purchases in question were made by a university not operated for profit, for its own use.

 The primary purpose of the purchases established beyond dispute, was to fulfill the needs of the University in providing bowling facilities for its students, faculty and staff. This being the case, any additional use of the bowling facilities by the general public for a fee, even if such use is substantial, would not establish that the purchases were not made for the use of the University.

Logan Lanes suggests that the purchases in question may not have been made for the University, but for a self-sustaining student activity carried on in the Student Union Building, and that this can be determined only by a full development of the facts. Students Book Company v. Washington Law Book Company, 98 U.S.App.D.C. 49, 232 F.2d 49, is cited in support of this view.

That case involved an alleged price discrimination by the defendant, a lawbook publishing company, in selling law books to self-sustaining campus book stores at preferential prices as compared to the prices it charged the plaintiff, a privately operated retail bookstore. The court held that sales to self-sustaining campus bookstores for resale at a profit are not sales to universities for the use of the universities within the meaning of section 13c of the Act, 232 F.2d at 50, n. 5.[5] In our case, however, it is undisputed that the bowling lanes installed in the

Student Union are used as part of the University's physical education program and are also used as recreational facilities for the students, faculty and staff. We think the case before us is distinguishable from the *Students Book Company* case.

We conclude that the district court did not err in granting summary judgment for Brunswick on the basis of the university exemption set out in the 1938 statute. We therefore do not reach the question of whether the so-called governmental exemption also provides a sufficient basis for granting summary judgment.

Affirmed.

5. The defendant nevertheless prevailed on another ground.