**PORTLAND RETAIL DRUGGISTS ASSOCIATION, INC., an Oregon nonprofit Corporation, on behalf of its assignors, Plaintiff-Appellant,**

v.

**ABBOTT LABORATORIES, an Illinois Corporation, et al., Defendants-Appellees.**

No. 73–2342.

United States Court of Appeals, Ninth Circuit.

Dec. 26, 1974.

Rehearing Denied March 11, 1975.

Certiorari Granted June 23, 1975.

See 95 S.Ct. 2655.

Roger Tilbury (argued), Portland, Or., Henry Kane (argued), Beaverton, Or., for plaintiff-appellant.

James H. Clarke (argued), Portland, Or., for defendants-appellees.

Before MERRILL and WALLACE, Circuit Judges, and POWELL,* District Judge.

MERRILL, Circuit Judge:

Plaintiff-appellant commenced this action as the assignee of the antitrust claims of more than sixty retail pharmacies engaged in business in the Greater Portland, Oregon, area. Suit was brought against twelve manufacturers of prescription drugs and sought injunctive relief and damages. Appellant's complaint was stated in five claims, only the second of which is involved in this appeal.[1] That claim charges that defendant drug manufacturers have violated the Robinson-Patman Act, 15 U.S.C. § 13 et seq. (1970),[2] by selling to certain hospitals[3] at prices lower than those

---

* Honorable Charles L. Powell, Senior United States District Judge for the Eastern District of Washington, sitting by designation.

1. The district court granted summary judgment on this claim and noted a controlling question; we accepted the interlocutory appeal under 28 U.S.C. § 1292(b).

2. Section 13(a) makes it "unlawful for any person engaged in commerce * * * to discriminate in price between different purchasers of commodities of like grade and quality * * * where such commodities are sold for use, consumption, or resale * * and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them * * *."

3. Appellant designates the following hospitals: Dwyer Memorial Hospital & Medical Center; Emanuel Hospital; Good Samaritan Hospital & Medical Center; Gresham Community Hospital; Holladay Park Hospital; Physicians and Surgeons Hospital; Portland Adventist Hospital; Portland Osteopathic Hospital; Providence Hospital; St. Vincent Hospital & Medical Center; Tuality Community Hospital; Willamette Falls Community Hospital; Willamette Methodist Convalescent Center; Bess Kaiser Hospital.

charged to the retail pharmacies, appellant's assignors; that the favored hospitals, to some extent at least, then engaged in the resale of the drugs so sold. Defendants-appellees contend that the sales in question are exempt from operation of the Act under 15 U.S.C. § 13c (1970), which reads:

"Nothing in sections 13 to 13b and 21a of this title, shall apply to purchases of their supplies for their own use by schools, colleges, universities, public libraries, churches, hospitals, and charitable institutions not operated for profit."

After limited discovery and submission of affidavits the district court granted summary judgment in favor of appellees on that claim. The court ruled that each of the fourteen hospitals here involved was "not operated for profit" and that the drugs had been purchased and used for each hospital's "own use." Both of these rulings are assigned as error on this appeal.

■ We reject appellant's contention that the hospitals did not qualify for exemption (even as to that portion of the purchases which might be "for their own use"), since none of them were "hospitals [or] charitable institutions not operated for profit." It was undisputed that the hospitals derived substantial profits from the sale of drugs and from time to time enjoyed over-all operating surpluses. However, the existence of such profits or surpluses is not in itself enough to foreclose availability of the exemption. In an integrated medical center it is to be expected that one department may provide financial support to another. No enterprise such as these could long remain in existence if each department consistently operated at a loss. Nor could it expect long to continue the fortuity of operating each department or the hospital as a whole precisely at the break-even point. There was no allegation that these hospitals (with the possible exception of Kaiser, see infra), distributed assets to any interested person, and they could not do so under the terms of their charters. The surpluses were expended in the over-all cost of continuing operations or invested for the improvement of facilities.[4] Accordingly, the district court did not err in ruling that the thirteen hospitals other than Kaiser were "not operated for profit" within the exemption. Logan Lanes, Inc. v. Brunswick Corp., 378 F.2d 212, 216 (9th Cir.), cert. denied, 389 U.S. 898, 88 S.Ct. 219, 19 L.Ed.2d 216 (1967).[5]

■ We believe the district court erred, however, in granting summary judgment as to sales made to Bess Kaiser Hospital. The effect of this hospital's operation as an element of an organization providing comprehensive health services to members for a predetermined fee, and the possibility that some of its physicians, partners in the Permanente Clinic, receive distributions based on net revenues of the Kaiser Foundation Health Plan (to which revenues from drug sales may contribute), appear to present disputed issues of fact which may be material to the hospital's nonprofit status under the exemption. Moreover, in our judgment the proper legal standard for determining whether Bess Kaiser Hospital is "not operated for profit" in these circumstances cannot be developed on the limited record before us. Since we remand the cause for further proceedings, this issue can more fully be explored below.

■ The remaining issue is whether purchases of drugs for resale were purchases by the hospitals "for their own

---

4. Since the exemption of appellees' sales is founded on the purchasers' status as nonprofit hospitals, we need not consider the possible relevance of the parallel exemption for "charitable institutions not operated for profit."

5. Since we limit the exemption to purchases by the hospitals "for their own use," we need not decide whether other uses to which the drugs purchased were put could be regarded as removing drugs purchased for such other uses from the nonprofit exemption. Assuming arguendo that some purchases by the hospitals were put to uses outside the nonprofit exemption, the exemption as to drugs purchased for hospital uses would not necessarily be unavailable. Cf. Young Men's Christian Ass'n v. Department of Revenue, 268 Or. 633, 522 P.2d 464 (1974).

use" as that phrase is used in § 13c. With disputed issues of fact resolved in favor of appellant for purposes of the motion for summary judgment, it appears that drugs were distributed by the hospitals under the following circumstances:

1. They were dispensed to the hospitals' in-patients in the course of treatment.

2. They were dispensed in the course of treatment to patients at emergency clinics operated by the hospitals.

3. They were provided to departing in-patients as take-home prescriptions.

4. They were provided to persons who had been in-patients as renewals of prescriptions which had first been filled while those persons were in-patients.

5. They were sold for home treatment to out-patients either at hospital pharmacies or at out-patient clinics.

6. They were sold to the hospitals' employees and students for the private use of purchasers.

7. They were sold to hospitals' physicians for their personal or family use or for dispensation in the course of their private practice.

8. They were sold to walk-in customers who were not hospital patients.

The circumstances covered by categories 1 and 2, relating to in-patient and emergency treatment, cover by far the greater part of hospital distribution. There is no dispute that such dispensing of drugs in the course of treatment in the hospital is the hospitals' own use. It is as to distribution under other circumstances that the parties are in dispute, both factually, as to the frequency of occurrence, and legally, as to whether those uses of the drugs can properly be regarded as the hospitals' own use.

Appellees justify the uses thus made by the hospitals as proper hospital functions. It is asserted that the need of the departing in-patient for take-home drugs is obvious, and that supplying this need is an essential hospital function; that sales to former patients are in connection with hospital or clinic treatment

earlier provided and permit such treatment to continue at home; that sale to employees is pursuant to collective bargaining agreements; that sales to students are an aspect of the hospitals' educational programs; that sales to physicians associated with the hospitals are a perquisite of that association; that sale to walk-in customers is limited to instances when needed drugs cannot be obtained elsewhere; that in all respects a decent regard for the needs of the community and the position of the hospital as a center for the provision of a full range of health services justifies all use made by the hospitals of the drugs sold to them.

We may concede that in these respects distribution by the hospitals can be justified as a proper and useful community service and thus can be regarded as a proper hospital function. It is not, however, the hospitals' "own use." Hospital use under § 13c, in our judgment, must be limited to use made by the hospital in dispensing drugs for hospital or clinic treatment of in-patients or emergency patients. The purpose for which these supplies are purchased—the use to which they are to be put—is their consumption. Section 13c can apply here only to cases in which a hospital can be said to be the consumer. It cannot apply to cases of resale by the hospital to a private consumer.

The hospitals here are (quite properly) accommodating patients, staff and strangers with means whereby they can conveniently purchase for *their* use. The question is not whether the hospitals can continue to provide this useful community service. The question is whether in providing it they may acquire the drugs for such resale at an acquisition price that discriminates against local retail druggists. We hold that they may not.

Logan Lanes, Inc. v. Brunswick Corp., *supra,* does not require the contrary result. There the alleged discriminatory pricing was for bowling alley equipment sold to a state university. The lanes had been acquired for use in connection with the university's physical education pro-

gram and for recreational use of faculty, staff and students and were operated for those purposes. They were not, however, closed to the general public and some public use (the extent was disputed) was made of them. We held:

> "The primary purpose of the purchases established beyond dispute, was to fulfill the needs of the University in providing bowling facilities for its students, faculty and staff. This being the case, any additional use of the bowling facilities by the general public for a fee, even if such use is substantial, would not establish that the purchases were not made for the use of the University."

378 F.2d at 217. The university's public use was indeed in competition with other local alleys, and it may be questioned whether the university should not, in all fairness, have been compelled to choose between the public use and the favorable exemption. But that is not what the statute requires. It requires only that the "supplies" be acquired by the university for its own use. It does not say that once acquired and put to that use they cannot then be used for any other purpose.

Our case does not involve the acquisition of plant equipment. It involves acquisition of stores of supplies. Plant equipment acquired for a university's own use cannot be segregated from that acquired for use by others, since the same equipment serves both uses. In the case of stores of supplies acquired for consumption the situation is otherwise. Supplies that are resold can readily be segregated from those devoted to a hospital's own use.

In this respect our case is similar to Students Book Co. v. Washington Law Book Co., 98 U.S.App.D.C. 49, 232 F.2d 49, 50–51 n. 5 (1955), cert. denied, 350 U.S. 988, 76 S.Ct. 474, 100 L.Ed. 854 (1956), where the 13c issue was disposed of in a footnote. The plaintiff, a retail seller of law books, complained of the defendant's sales at lower prices of books to campus bookstores at law schools. The distinction drawn by the court was similar to the one we draw here—between sales of books to universities for their own use, i. e., for their libraries, and sales to university connected bookstores for resale to students.

Our holding makes it unnecessary for us to deal with the remaining assignment of error.

The judgment is vacated and the cause remanded for further proceedings.