**JEFFERSON COUNTY PHARMACEUTI-
CAL ASSOCIATION, INC.,**
Plaintiff-Appellant,

v.

**ABBOTT LABORATORIES, et al.,**
Defendants-Appellees.

No. 79–1150.

United States Court of Appeals,
Fifth Circuit.

Aug. 31, 1981.

Thomas A. Clark, Circuit Judge, dissented and filed opinion.

A. J. Noble, Jr., Birmingham, Ala., for Squibb, Ciba-Geigy, Upjohn and Pfizer.

James C. Barton, Gilbert E. Johnston, Jr., Birmingham, Ala., for American Cynamid Co.

Before VANCE, FRANK M. JOHNSON, Jr. and THOMAS A. CLARK, Circuit Judges.

PER CURIAM:

AFFIRMED on the basis of the district court's Memorandum of Opinion dated December 1, 1978, a copy of which appears as an appendix hereto.

AFFIRMED.

Joe L. Tucker, Jr., Bessemer, Ala., Allen W. Howell, Montgomery, Ala., for plaintiff-appellant.

M. Roland Nachman, Jr., Montgomery, Ala., L. Murry Alley, Michael Atchison, Robert M. Collins, Birmingham, Ala., for Bristol-Myers.

Duncan Y. Manley, Birmingham, Ala., Robert F. Ward, Richard S. Rhodes, Chicago, Ill., for Abbott Lab.

Betsy Kimball, R. Lee Walthall, Birmingham, Ala., David Klingsberg, New York City, for Pfizer.

James L. North, E. Alston Ray, Edwin A. Strickland, William H. Mills, John J. Coleman, Jr., E. Mabry Rogers, Linda A. Friedman, Birmingham, Ala., Joseph H. Spain, New York City, William G. Somerville, Jr., Birmingham, Ala., for G. D. Searle.

THOMAS A. CLARK, Circuit Judge, dissenting:

I respectfully dissent. The majority sanctions the defendant wholesale drug companies' violations of the Robinson-Patman Act, 15 U.S.C. § 13.[1] Further, the decision permits the six states of this circuit and their agencies to unfairly compete with private enterprises operated by their citizens in the retail sale of goods. A state's size gives it great purchasing power and thus an awesome competitive advantage over private business. To this the court adds the advantage of a license to make use of price discrimination in its wholesale purchases.

The majority admits that this is a close case. It reaches its conclusion by creating an exemption not contained in the statute.

1. The Robinson-Patman Act, ch. 592, 49 Stat. 1526 (1936), amended certain provisions of the Clayton Act, ch. 323, 38 Stat. 730 (1914). The amended product is codified at 15 U.S.C. § 13, the pertinent provisions of subsection (a) are as follows:

(a) It shall be unlawful for any persons engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption or resale within the United States . . . , and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them. . . .

This is contrary to the congressional scheme which was a response to economic conditions existing when the Act was passed. Further, the result contradicts the congressional intent clearly reflected at hearings when the Act was under consideration. Lastly, the decision does not follow the only guiding precedent of the Supreme Court, *Abbott Laboratories v. Portland Retail Druggists Assn., Inc.*, 425 U.S. 1, 96 S.Ct. 1305, 47 L.Ed.2d 537 (1976).

Instead of creating an exemption to the statute, I would follow the policy underlying the antitrust laws. I would hold that, for the purposes of the Robinson-Patman Act, when a state moves outside its traditional sphere of activity and into retail competition with private enterprise, it should be treated in precisely the same manner as its competitors. Today's decision subverts the policy behind the Robinson-Patman Act. It subjects businessmen, who suddenly have found themselves in competition with pharmacies owned by the State of Alabama, to the unfortunate effects of unfair competition without affording them a remedy. This result is not only inequitable, it is in direct conflict with the language and major thrust of the Act.

The statute makes it unlawful for the defendant wholesale drug companies "to discriminate in price between different purchasers of commodities ... where such commodities are sold for use, consumption or resale ..., and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce ...".[2] The district court dismissed the complaint filed by the Jefferson County Pharmaceutical Association, which alleged that the defendant drug companies were selling to the state hospital at lower wholesale prices than to them, that such commodities were resold by the state hospital pharmacies at retail, and that these sales substantially lessened competition among the retail drug businesses in the county. As will be discussed subsequently, the federal and state governments are not covered by the statute when purchasing for consumption. The majority has taken this non-coverage of governments in the Act and has called it an exemption. It then reasons that the exemption permits resale and consequently, a lessening of competition. To me this reasoning is unfathomable. Even if this argument were valid, the Supreme Court in *Portland Retail Druggists* has clearly announced that such permitted purchases for consumption may not be extended to the sale at retail to consumers in competition with private enterprises.

When Congress had under consideration the Robinson-Patman Act, some members raised the question of the effect of such legislation upon purchases by governments. Congressional members at the hearings wanted to make certain that the federal government would not be limited by the act when purchasing goods. Congress assumed, as evidenced at the hearings on the Act, that the government is not in competition when it is purchasing goods for its own consumption.[3] Any similar construction to be inferred in favor of state-supported ac-

---

2. 15 U.S.C. § 13(a).

3. This is illustrated in testimony before the House Judiciary Committee by H. B. Teegarden, the author of the Robinson-Patman Act. Part of the questioning is especially enlightening:

MR. LLOYD. Would this bill, in your judgment, prevent the granting of discounts to the United States Government?

MR. TEEGARDEN. Not unless the present Clayton Act does so. So far as that problem is concerned, it is no different from that which exists under the present Clayton Act.

MR. LLOYD. For instance, the Government gets huge discounts. Take that electric fan, for instance. You go to the ordinary store and the list price is $35. The Procurement Division procures them delivered, one at a time, for $13.18. Now, would that discount be barred by this bill?

MR. TEEGARDEN. I do not see why it should, unless a discount contrary to the present bill would be barred—that is, the present law—would be barred by that bill. Aside from that, my answer would be this: The Federal Government is not in competition with other buyers from these concerns. Therefore a discrimination—it is so applied universally in interstate commerce law, in the railroad law—to have a discrimination, there must be a relative position between the parties to the discrimination which constitutes an injury to one as against the other. I think the answer is to be found in that.

tivities, therefore, would hold true only so long as the state is functioning as a consumer rather than as a competitor.[4]

Thus, Congress construed the Act as not covering purchases for government consumption. However, a purchase for *retail* *resale* is a completely different animal from a purchase for *consumption*. In the instant case, the state government is in competition with private enterprise. Therefore the rationale behind the majority's "governmental exemption" is inapplicable.[5]

> In other words, if seller A makes a price to a retailer in New York and a different price to a retailer in San Francisco, all other things aside, no case of discrimination could be predicated there, because the two are not in the same sphere at all.
> The Federal Government is saved by the same distinction, *not of location but of function. They are not in competition with anyone else who would buy.* [Emphasis added.]

Brief of Appellees Abbott Laboratories, et al., at 66, *quoting Hearings Before the House Committee on the Judiciary on Bills to Amend the Clayton Act*, 74th Cong., 1st Sess., 208–09 (hereinafter cited as *Hearings*).

4. Indeed, the author of the Robinson-Patman Act expressly advised members of the House Committee that anti-competitive purchasing and resale by municipal hospitals would be covered by the Act. When pressed to explain how far state and local government liability would extend under the Act, Teegarden offered the only testimony to be found in the consideration of the Act that is directly relevant to the question we decide:

> MR. HANCOCK. It would eliminate competitive bidding all along the line, would it not, in classes of goods that would be covered by this bill?
> MR. TEEGARDEN. You mean competitive bidding on Government orders?
> MR. HANCOCK. Government, State, city, municipality.
> MR. TEEGARDEN. No; I think not.
> MR. MICHENER. If it did do it, you would not want it, would you?
> MR. TEEGARDEN. No; I would not want it. It certainly does not eliminate competitive bidding anywhere else, and I do not see how it would with the Government.
> MR. HANCOCK. You would have to bid to the city, county, exactly the same as anybody else; same quantity, same price, same quality?
> MR. TEEGARDEN. No.
> MR. HANCOCK. *Would they or could they sell to a city hospital any cheaper than they would to a privately-owned hospital, under this bill?*
> MR. TEEGARDEN. I would have to answer it this way. In the final analysis, it would depend upon numerous questions of fact in a particular case. *If the two hospitals are in competition with each other, I should say then that the fact that one is operated by the city does not save it from the bill. If they are*

> *not in competition with each other, then they are in a different sphere.*
> The facts of the situation are not present upon which to predicate a discrimination, in the nature of the case. I do not see that that question becomes any different under this bill from what it is under the present section 2 of the Clayton Act, for that bill also prohibits discrimination generally in the same terms that this does. But it differs in the breadth of the exceptions. That is the only difference between the two bills.

Brief of Appellees Abbott Laboratories, et al., *quoting Hearings, supra* note 3, at 209 (emphases added).

This exchange is all the more noteworthy for the majority's complete failure to rationalize its conclusion with today's decision. The opinion of the lower court, upon which the majority relies, does not distinguish this discussion. From the testimony just quoted, the conclusion is inescapable that the Act's author believed that hospital retail competition by state instrumentalities would be subject to the anti-price discrimination provisions of the Robinson-Patman Act.

The lower court's reliance on only part of Teegarden's testimony, and its apparent ignorance of the testimony just quoted, is therefore puzzling. Counsel for the appellant association informed us at oral argument, however, that this discussion with Rep. Hancock, which so clearly bears on the issue before us, was not cited to the lower court by appellees and was not known to the appellant at the time of hearing before the lower court, and indeed the lower court concluded that "[n]o contrary expression of opinion during the legislative history of the Act has been cited to the court." *Id.* I note only that this might explain the lower court's failure to discuss this very important testimony. The majority's failure to correct this omission in *their* opinion's discussion of the legislative history, however, is to me a complete mystery.

5. The federal government is exempted from liability for anticompetitive retail activities on the principle of sovereign immunity. Teegarden commented in a letter to the Committee that the Clayton Act, as it was proposed to be amended by the Robinson-Patman bill, does not include the United States within § 13's use of the word "purchaser." That being the case, well-established principles of sovereign immunity would narrowly limit the sovereign's expo-

The Nonprofit Institutions Act, an amendment to the Robinson-Patman Act,[6] provides an exemption from the Robinson-Patman Act for non-profit organizations making purchases for their own use. Recently, the Supreme Court has interpreted the Nonprofit Institutions Act as not applying to privately-owned hospitals when operating outside their "intended institutional operation." *Portland Retail Druggists*, 425 U.S. at 14, 96 S.Ct. at 1314 (1976). The present case is indistinguishable from *Portland Retail Druggists* except for the fact that the hospitals in question are owned by the State of Alabama. In *Portland Retail Druggists* the Supreme Court looked to the policy behind the antitrust laws. When the hospitals in question acted as *competitors* instead of *consumers*, the Court ruled that no Nonprofit Institutions Act exemption applied. Since Congress did not intend an exemption for states acting as competitors, the majority should have concentrated on the role the state hospitals were playing and not merely on their status as agencies of the state.

Generally, "the anti-trust laws, and Robinson-Patman in particular are to be construed liberally, and the exceptions are to be construed strictly,"[7] Since "the Act is remedial, it is to be construed broadly to effectuate its purposes," therefore "implied anti-trust immunity is not favored."[8] Only "some overriding public policy," *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 397, 98 S.Ct. 1123, 1128, 55 L.Ed.2d 364 (1978) (plurality opinion), is sufficient to overrule the presumption *against* state immunity from the application of the antitrust laws,[9] and in the instant case the majority has shown no such policy.[10]

sure to suit, precluding it altogether in the event of ambiguity. Teegarden's letter read in part:

2. Would the bill prevent competitive bidding on government purchases below trade price levels?

This question was raised by a member of the committee at the hearing. The answer is found in the principle of statutory construction that a statute will not be construed to limit or restrict in any way the rights, prerogatives, or privileges of the sovereign unless it so expressly provides—a principle inherited by American jurisprudence from the common law. (*Dollar Savings Bank v. United States* (1874), 19 Wall. 227, 22 L.Ed. 80; *United States v. Herron* (1874), 20 Wall. 251, 22 L.Ed. 275; *Magdalen College case*, 11 Coke 74; *King v. Allen*, 15 East 333; Maxwell on Interpretation of Statutes, 6th Ed. (Eng.), p. 244–251).

Brief of Appellees Abbott Laboratories, et al., at 28 *quoting Hearings, supra* note 3, at 250. Never to my knowledge, however, has it been understood to be a principle of sovereign immunity that one sovereign may avail itself of the immunity from suit of another, especially when the latter is exercising a power delegated to it by the former. This rationale is therefore of no relevance to state activities otherwise prohibited by the Robinson-Patman Act.

6. The Nonprofit Institutions Act, ch. 283, 52 Stat. 446 (1938), is codified at 15 U.S.C. § 13c and provides as follows:

Nothing in section 13 . . . of this title [15], shall apply to purchases of their supplies for their own use by schools, colleges, universities, public libraries, churches, hospitals, and charitable institutions not operated for profit.

7. *Portland Retail Druggists*, 425 U.S. at 11, 96 S.Ct. at 1313.

8. *Id.*, 425 U.S. at 12, 96 S.Ct. at 1313.

9. The majority seeks to distinguish the language in *City of Lafayette*, on the ground that the case was decided on the basis of the Sherman Act and not upon the Robinson-Patman Act. The argument runs that Congress used its powers under the Commerce Clause to the constitutional maximum in enacting the Sherman Act, while it did not use its powers to the full extent in the Clayton/Robinson-Patman Act. This argument is spurious. A comparison of the language used in the two statutes demonstrates that the only significant difference between them is the extent to which the activities complained of must affect interstate commerce. *See generally Gulf Oil Corp. v. Copp Paving Co., Inc.*, 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974). There is no difference in terms of the scope of who or what activities are regulated. *Cf. City of Lafayette*, 435 U.S. at 396, 98 S.Ct. at 1127–8 (comparing the scope of § 8 of the Sherman Act and § 4 of the Clayton Act). Thus, there is no basis for regarding the holding of *City of Lafayette* as anything less than compelling here.

10. The only policy argument advanced in support of today's result is the state's paramount interest in procuring the things it needs in order to do what it wants at the lowest cost. That policy is undisturbed by § 13's focus on the relative advantages of competing retailers. If my reasoning had been adopted in this case, this interest would not be threatened.

Therefore the majority, in its unconvincing reasoning, has ignored not only a clear legislative history but also the policy behind the Act and the basic principles of antitrust law interpretation.

A brief comment should be made regarding the federalism argument used by the majority partially to support its opinion. Any reliance on *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), is completely misplaced. Whatever state operations may be implicated by this action, what is complained of can in no way be characterized as a traditional government function or as an incident of state sovereignty. The complaint alleges that these state hospitals have ventured beyond their institutional function (and whatever state operations that might be incident thereto), and have begun instead to compete in the retail sale of drugs. This effectively distinguishes the present case from *Usery*, which concerned federal regulation of essential attributes of state sovereignty.[11] Thus, there is no substance to the Tenth Amendment argument that has been advanced.

Therefore, I disagree with both the conclusion of the majority to affirm the district court and with the reasons used by the majority in reaching its conclusion. The majority takes the fact that governments as consumers are excluded by the Act, calls such an exclusion an exemption, and then concludes that the exemption permits a government to sell in competition at retail with established businesses. Instead, I would look to the unambiguous language of the Act and at the clear policies behind the antitrust laws. I would look at the role of the state when it makes a purchase: if it is that of a consumer, the Act does not apply; but if, as in the instant case, it is that of a competitor, the state should be subjected to the Robinson-Patman regime. One need only look at the result today to see how blatantly the policies behind the Act have been disregarded. Therefore, I dissent.

### APPENDIX

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

| JEFFERSON COUNTY PHARMACEUTICAL ASSOCIATION, INC., | ) ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| – vs. – | ) ) ) ) | NO. CA 78–P–0870–S |
| ABBOTT LABORATORIES, et al., | ) ) | |
| Defendants. | ) | |

### MEMORANDUM OF OPINION

*Abbott Laboratories v. Portland Retail Druggists Ass'n*, 425 U.S. 1, 96 S.Ct. 1305, 47 L.Ed.2d 537 (1976), held that 15 U.S.C. § 13c did not exempt from the Robinson-Patman Price Discrimination Act, 15 U.S.C. § 13, drug purchases by nonprofit hospitals which were later dispensed by the hospital pharmacies (1) to staff, employees, and students of the hospital (other than for the personal use of themselves or of their dependents), (2) to "walk-in" customers, or (3) as refills to former patients. The basic question in this case, presented on motions to dismiss, is whether a violation of the Robinson-Patman Act can be premised upon such purchases when made by hospitals operated by an agency or subdivision of a state.

---

11. The Supreme Court has only recently reminded us of the limits of the *Usery* doctrine.
    [I]n order to succeed, a claim that congressional commerce power legislation is invalid under the reasoning of *National League of Cities* must satisfy *each* of three requirements. First, there must be a showing that the challenged statute regulates the "States as States." ... Second, the federal regulations must address matters that are indisputably "attributes of state sovereignty." ... And third, it must be apparent that the

States' compliance with federal law would directly impair their ability "to structure integral operations in areas of traditional functions."
*Hodel v. Virginia Surface Mining and Regulation Assn., Inc.*, —— U.S. ——, ——, 101 S.Ct. 2352, 2366, 69 L.Ed.2d 1 (1981) (sustaining constitutionality of Surface Mining Control and Reclamation Act of 1977).
Needless to say these requirements can hardly be considered satisfied in the instant case.

It is alleged in the complaint that local retail pharmacies have been injured by virtue of lower prices being charged by drug manufacturers to competing pharmacies operated in conjunction with the county hospital and with the hospitals and clinics of the Medical College of the state university. The plaintiff—a trade association to which the claims of its member pharmacies have been assigned—is seeking injunctive relief and treble damages against fifteen drug manufacturers and against the governmental bodies which operate the "favored" pharmacies. For purposes of the motions to dismiss,[1] it must be assumed that the allegations of the complaint are correct and, moreover, that at least some of the governmental purchases would be beyond the exemption described in *Abbott Laboratories, supra.*

### I.

A preliminary question is whether the plaintiff association can maintain the action either in its own right or in its capacity as assignee, a matter not raised in *Abbott Laboratories, supra.*

The award of treble damages is limited to injured parties, *Brunswick Corp. v. Pueblo-Bowl-O-Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977); and the fact of injury is critical to the establishment of the cause of action, *Alabama v. Bluebird Body Co.,* 573 F.2d 309 (CA5 1978). Here, the claimed injuries are not those of the association itself, nor are they such as would be shared in common and in equal degree by plaintiff's entire membership. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). It appears therefore that the plaintiff cannot maintain this action in its own right either for damages or for injunctive relief. See *Buckley Towers Condominium, Inc. v. Buchwald,* 533 F.2d 934 (CA5 1976), *cert. denied,* 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 571 (1977); *Burleigh House Condominium, Inc. v. Buchwald,* 546 F.2d 57 (CA5 1977), *cert. denied,* 433 U.S. 909, 97 S.Ct. 2975, 53 L.Ed.2d 1093 (1977); *Pacific Coast Agricultural Export Ass'n v. Sunkist Growers, Inc.,* 526 F.2d 1196 (CA9 1975), *cert. denied,* 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976).

While acknowledging that antitrust claims can be validly assigned, *e. g., Copper Liquor, Inc. v. Adolph Coors Co.,* 506 F.2d 934 (CA5 1975), defendants assert that the plaintiff should here be treated as a mere "agent" for collection under the rule stated in *Archie v. Shell Oil Co.,* 110 F.Supp. 542 (E.D.La.1953), *aff'd per curiam,* 210 F.2d 653 (CA5 1954), *cert. denied,* 348 U.S. 843, 75 S.Ct. 64, 99 L.Ed. 665 (1954). *Cf. California League of Independent Insurance Producers v. Aetna Casualty and Surety Co.,* 175 F.Supp. 857 (N.D.Cal.1959). At this stage of the case,[2] however, there is no reason to hold the alleged assignments ineffective with respect either to the damage claims or to the claims for injunctive relief. See *Pacific Coast Agricultural Export Ass'n v. Sunkist Growers, Inc.,* 526 F.2d 1196 (CA9 1975), *cert. denied,* 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976); 3A Moore's Federal Practice, ¶ 17.09[1.—1]. It should be noted, moreover, that even if defendants' assertions as to the real parties in interest should be later upheld, the court would under F.R.Civ.P. Rule 17(a) provide an opportunity for joinder or substitution of the plaintiff's assignors.

### II.

One[3] of the defendants—the Board of Trustees of the University of Alabama—

---

1. One of the defendant manufacturers has moved for summary judgment on the alternative basis that it made no sales to the plaintiff's assignors and members. This issue is discussed in Part IV, *infra.*

2. Attached to defendant's brief is a copy of one of the assignments, which appears to be sufficient as an assignment for collection. Legal consideration for the assignments may well be provided by virtue of the fact that the various assignors are entitled thereunder to a pro rata distribution of recoveries in the action.

3. It is not clear whether The Cooper Green Hospital also asserts immunity under the Eleventh Amendment. What is clear is that it is entitled to such immunity neither for the period when it was operated by the county commissioners under the name Mercy Hospital nor for

asserts that it is immune from this action by virtue of the Eleventh Amendment. In part the court agrees.

The status of the Board under applicable state constitutional, legislative, and decisional law is remarkably similar to that analyzed in *Jagnandan v. Giles*, 538 F.2d 1166 (CA5 1976) *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977). The claims against the Board must therefore be treated as equivalent to claims against the State itself. *Cf. Hander v. San Jancinto Junior College*, 519 F.2d 273 (CA5 1975).

Nor has there been a waiver of that immunity, or implied consent to be sued; for the state engaged in the activities complained of—whether viewed as operation of a university, as providing of hospital services, or as purchasing of goods—before enactment of the federal legislation and, moreover, that legislation contains no clear expression of intent that state conduct be subject to the private remedies therein provided. See *Intracoastal Transportation, Inc. v. Decatur County*, 482 F.2d 361 (CA5 1973).

The constitutional immunity, however, bars only the claims for damages, and not the request for prospective injunctive relief which is also urged by the plaintiff. See *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Jagnandan v. Giles, supra*. Accordingly, the Eleventh Amendment does not provide a basis for dismissal of all the claims made against the Board.

### III.

The central issue is whether sales to governmental agencies are subject to the proscriptions of the Robinson-Patman Price Discrimination Act, 15 U.S.C. § 13. Whether considered as involving the scope of the Act or an implied exemption from the Act, the question is essentially one of statutory construction in the light of Tenth Amendment implications. There are no appellate court decisions directly on point. The question is a close one.

Four major considerations support the plaintiff's position that governmental purchases are subject to the Act. (1) Governmental agencies are not, merely by reason of such status, exempt from the antitrust laws. *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). (2) The Robinson-Patman Act is to be construed liberally, with exceptions thereto construed strictly and implied exemptions therefrom disfavored. *Abbott Laboratories v. Portland Retail Druggists Ass'n*, 425 U.S. 1, 96 S.Ct. 1305, 47 L.Ed.2d 537 (1976). (3) The statutory language—"persons" and "purchasers"—is sufficiently broad to cover governmental bodies. 15 U.S.C. §§ 12, 13(a, f). (4) An explicit exemption is provided for certain purchases. 15 U.S.C. § 13c. The plaintiff argues that trial court rulings holding Robinson-Patman inapplicable to governmental purchasers have not received appellate approval and are effectively overruled by the later Supreme Court decisions on related questions. Curiously, the plaintiff in its brief makes a concession that Robinson-Patman would not be violated if favored governmental purchasers were to give away the purchased items.[4]

As the defendants argue, both *Abbott Laboratories* and *Louisiana Power* can be distinguished from the case *sub judice*. The Supreme Court in *Abbott Laboratories* was concerned with sales to non-governmental hospitals and, indeed, noted without criticism that the trial court had dismissed counts based on sales to governmental hospitals "for failure to state a claim." 425 U.S. at 4, n. 2, 96 S.Ct. at 1309. *Louisiana Power*, on the other hand, involved claims under the Sherman Anti-trust Act, legislation in which Congress was "exercising the

the period it has been operated under the provisions of Alabama Code (1975), §§ 22–21–70 *et seq.*

**4.** It is unclear whether plaintiff would consider the nonremunerative distribution by a governmental agency as being "for its own use" under 15 U.S.C. § 13c, or as being outside the "commerce" and "competition" standards of 15 U.S.C. § 13, or as meeting some implied exemption in the law.

full extent of its constitutional power." 435 U.S. at 398, 98 S.Ct. at 1129. *Cf. Gulf Oil Corp. v. Copp Paving Co., Inc.,* 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974) (Robinson-Patman more restricted in scope than Sherman). Moreover, the activities challenged in *Louisiana Power* had been undertaken volitionally by the municipalities, independent of any state directive or policy, whereas in the present case the questioned conduct—acquisition of goods by governmental bodies at the most favorable prices available—involves not only state policy, but state mandates.[5]

It may, however, be a mistake to place great emphasis upon these distinctions. After all, the breadth of language used in the majority opinions of both *Abbott Laboratories* and *Louisiana Power* hardly supports the notion of any broad exemption from Robinson-Patman for state agencies and subdivisions. Indeed, the opinion of the Court in *Louisiana Power* at two footnotes seemingly rejected such an exemption[6] and cited with apparent approval earlier decisions which had subjected governmental bodies to other federal statutes prohibiting preferential treatment.[7]

In contending that governmental purchases are beyond the intended reach of Robinson-Patman, the defendants cite interpretations to that effect expressed prior to enactment by its chief draftsman and reiterated over a period of the following four decades by its chief sponsor, by other commentators, by government officials, and by all the courts that have addressed the question. Moreover, defendants say, the continued declination by Congress to provide for inclusion of such purchases in the face of these virtually unanimous interpretations although at least twice provided with a call to do so, argues against a judicial expansion of the Act at this late date. See *Gulf Oil Corp. v. Copp Paving Co., Inc.,* 419 U.S. 186, 199–201, 95 S.Ct. 392, 400–401, 42 L.Ed.2d 378 (1974); *Flood v. Kuhn,* 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972); *FTC v. Ruberoid Co.,* 343 U.S. 470, 478–79, 72 S.Ct. 800, 805–806, 96 L.Ed. 1081 (1952); *FTC v. Bunte Bros., Inc.,* 312 U.S. 349, 351–52, 61 S.Ct. 580, 581–582, 86 L.Ed. 881 (1941).

During consideration by the House Judiciary Committee of the proposed legislation, H. B. Teegarden—described by Representative Patman as the author of the bill—explained that it would not require bidding to cities and counties on the same basis as to private purchasers and again that, absent express provisions, it would not prevent competitive bidding on governmental purchases below trade price levels.[8] See *Hear-*

---

**5.** See Alabama Code (1975), §§ 41–16–20, 41–16–21. Applicability of similar restrictions to counties and county hospitals under Article 3 of Chapter 16 of Title 41 of the Alabama Code (1975) is less clear. *Cf.* Alabama Code (1975) § 22–21–190 (bid laws made applicable to some county hospitals). It may be argued that the state policy is not to require that lower prices be given to governmental purchasers than to private purchasers, but only that the governmental purchaser buy at the lowest price offered; and this is certainly so. It is, however, perhaps of significance that the state bid laws contain exceptions for sales made in violation of the Sherman Anti-trust Law but not for those contrary to Robinson-Patman. See Alabama Code (1975), §§ 41–16–25, 41–16–55.

**6.** See 435 U.S. at 397, n. 14, 98 S.Ct. at 1128 (treating 15 U.S.C. § 13c as creating an exemption for certain municipal service operations); 435 U.S. at 402, n. 19, 98 S.Ct. at 1131 (viewing the Elkins Act, from which a governmental exemption had earlier been rejected, as similar to Robinson-Patman).

**7.** The referenced decisions, *Union Pacific R. Co. v. United States,* 313 U.S. 450, 61 S.Ct. 1064, 85 L.Ed. 1453 (1941), and *California v. United States,* 320 U.S. 577, 64 S.Ct. 352, 88 L.Ed. 322 (1944), may perhaps themselves be distinguished because the federal legislation involved, the Elkins Act and the Shipping Act of 1916, respectively, related to the very instrumentalities and facilities of commerce and transportation. A third cited case, *Ohio v. Helvering,* 292 U.S. 360, 54 S.Ct. 720, 78 L.Ed. 1467 (1934), involved a state activity (distribution of alcoholic beverages) clearly falling outside the parameters of traditional governmental functions.

**8.** But for his reliance on principles of statutory construction, Mr. Teegarden's statements could be understood as premised upon the fact that governmental purchases would not typically have a potential effect upon competition.

ings *Before House Committee of the Judiciary on Bills to Amend the Clayton Act*, 74th Cong., 1st Sess. 209, 250 (1935). No contrary expression of opinion during the legislative history of the Act has been cited to the court.

Representative Patman has twice expressed the opinion that the Act which he co-sponsored did not apply to sales to governmental institutions. See Patman, The Robinson-Patman Act (1938), p. 168; Patman, Complete Guide to the Robinson-Patman Act (1963), p. 30.

Other texts have similarly concluded that sales to governmental agencies are beyond the scope of the Robinson-Patman Act. See Rowe, Price Discrimination Under the Robinson-Patman Act (1962), pp. 83–84; 3 Von Kalinowski, Antitrust Laws and Trade Regulation (1978), § 24.06[2]; 5A Cavitch, Business Organizations, § 105D.01[8][b, c].

The Attorney General of the United States, who has responsibilities in the enforcement of the Act, has from the outset taken the position that there was an implied governmental exemption. See 38 Op. Att'y Gen. 539 (1936) (citing long-standing practice under the predecessor statute and principles of statutory construction). This view was reaffirmed by Attorney General Kennedy in 1962 in his Report under Executive Order 10936 on Identical Bidding in Public Procurement and in 1973 by the Comptroller General of the United States, 1973–2 CCH Trade Cases ¶ 74,642. Similar decisions with respect to state agencies were reached in 1937 by the Attorneys General of Minnesota and Wisconsin and in 1977 by the Attorney General of North Carolina.[9]

Every judicial decision on the question has held the Robinson-Patman Act inapplicable to governmental purchases. Reviewing appellate courts have never disapproved such rulings. *General Shale Products Corp. v. Struck Construction Co.*, 37 F.Supp. 598 (W.D.Ky.1941), *aff'd on other grounds*, 132 F.2d 425 (CA6 1942), *cert. denied*, 318 U.S. 780, 63 S.Ct. 857, 87 L.Ed. 1148 (1943);

*Sachs v. Brown-Forman Distillers Corp.*, 134 F.Supp. 9 (S.D.N.Y.1955), *aff'd per curiam on basis of district court opinion*, 234 F.2d 959 (CA 2 1956), *cert. denied*, 352 U.S. 925, 77 S.Ct. 221, 1 L.Ed.2d 160; *Logan Lanes, Inc. v. Brunswick Corp.*, Civil Action No. 4–66–5 (unpublished opinion, D. Idaho, May 26, 1966), *aff'd on other grounds*, 378 F.2d 212 (CA9 1967), *cert. denied*, 389 U.S. 898, 88 S.Ct. 219, 19 L.Ed.2d 216 (1967); *Portland Retail Druggists Ass'n v. Abbott Laboratories*, Civil Action No. 71–543 (unpublished opinion, D.Ore., September 11, 1972), *remanded on other issues*, 510 F.2d 486 (CA 9 1974), *remanded on other issues*, 425 U.S. 1, 96 S.Ct. 1305, 47 L.Ed.2d 537 (1976). Also see *Sperry Rand Corp. v. Nassau Research & Development Associates, Inc.*, 152 F.Supp. 91 (E.D.N.Y.1957) (disclaiming any ruling that denied existence of governmental exemption); *Rangen, Inc. v. Sterling Nelson & Sons, Inc.*, 351 F.2d 851 (CA9 1965) (any governmental exemption not applicable merely because ultimate consumer would be a government); *Pacific Engineering & Production Co. v. Kerr-McGee Corp.*, 1974–1 CCH Trade Cases ¶ 75,054 (D.Utah 1974) (governmental exemption not applicable merely because ultimate consumer would be a government); *Mountain View Pharmacy v. Abbott Laboratories*, Civil Action No. C–77–0094 (unpublished order, D. Utah, August 15, 1977) (consent by plaintiffs to dismiss with prejudice of Robinson-Patman claims based on sales to governmental agencies).

During this period of accord that governmental purchases were outside the scope of the Robinson-Patman Act, legislation was twice introduced to amend the Act to bring those transactions within its coverage. See H.R. 4452, 82nd Cong., 1st Sess. (1951); H.R. 3377, 83rd Cong., 1st Sess. (1953). The proposed amendments were not enacted by Congress. There is no indication that Congressional inaction was in any way premised upon a belief that such legislation was unnecessary to impose such coverage.

---

**9.** Contrary conclusions were reached in 1937 by the Attorney General of California and in 1949 by the Attorney General of Georgia, the latter however considering only the question of whether there could be proscribed discrimination in *sales by* a state factory.

A key question is what significance to give to the enactment of The Nonprofit Institutions Act, 52 Stat. 446, which in 1938 exempted from Robinson-Patman certain purchases by "schools, colleges, universities, public libraries, churches, hospitals, and charitable institutions not operated for profit." 15 U.S.C. § 13c. It can be argued that Congress intended that only such purchases by universities and hospitals as satisfied the requirements of this explicit exemption were to be outside the scope of the Robinson-Patman Act. Or it can be argued that the amendment was intended to treat such purchases by non-profit private institutions as satisfied the requirements of the explicit exemption in like manner as those of governmental institutions by reason of an existing implicit exemption. The court is inclined to accept the latter interpretation as more probably correct.

At no point during the sparse legislative history is mention made of any intent that the proposed amendment affect governmental institutions of the types listed. The reports of the House Judiciary Committee, Reports 1769 and 2161, 75th Cong., 3rd Sess. (1938), described the bill as one for the exemption of "eleemosynary institutions", a term commonly understood as referring to charitable bodies supported by private gifts, rather than taxes. Cf. *The Society for the Propagation of the Gospel in Foreign Parts v. New Haven*, 21 U.S. (8 Wheat) 464, 5 L.Ed. 662 (1823). In support of the need for legislation, the report included a letter from an association of voluntary nonprofit hospitals, explaining how such institutions relieved burdens that otherwise would be borne by federal, state and municipal bodies. It is hardly likely that Congress would have intended to treat eleemosynary institutions more favorably than similar facilities operated by governmental bodies. Nor does it appear likely that Congress by enacting 15 U.S.C. § 13c intended to treat purchases for governmental hospitals, libraries and schools more favorably than those for other traditional governmental uses, such as for police, fire, prison, streets, poorhouse, etc. The only rational answer is

that, when it passed in 1938 the exemption for certain purchases by non-profit institutions, Congress did so in the belief—as stated by Representative Patman in his text of the same year—that governmental purchases were already beyond the scope of the Act.

As stated at the outset of this discussion, the question as to applicability of Robinson-Patman to governmental purchases is a close one. On balance, however—and while aware of the disfavor which must meet claims of implied limitations on the scope of, or of implied exemptions from, the antitrust laws—the court agrees here with the defendants; namely, that governmental purchases are, without regard to 15 U.S.C. § 13c, beyond the intended reach of the Robinson-Patman Price Discrimination Act, at least with respect to purchases for hospitals and other traditional governmental purposes.

Additional support for this conclusion can be found in the Tenth Amendment and in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). In *National League*, the Supreme Court held an explicit attempt by the federal government to extend the provisions of the Fair Labor Standards Act to states and their political subdivisions to be beyond the authority conferred by the Commerce Clause, at least as applied to "areas of traditional governmental functions." 426 U.S. at 852, 96 S.Ct. at 2474. Overruling *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), the Court held that this constitutional limitation would likewise apply with respect to wages paid to employees of governmental hospitals and schools. 426 U.S. at 855, 96 S.Ct. at 2475. The policy considerations discussed in *National League*, resulting in rejection of a federal statute specifying minimum prices to be paid by governmental bodies for labor comparable to that required of private institutions, appear to be no less cogent when deciding whether another federal statute should be interpreted to specify minimum prices to be paid by governmental bodies

for goods comparable to that required of private institutions.[10]

## IV.

One of the defendants—Burroughs Wellcome Co.—has in the alternative moved for summary judgment. It asserts by the affidavit and deposition of its Sales Administration Manager that it has made no sales to any of plaintiff's assignors or to any of the defendant pharmacies, confining its sales in this area rather to local independent wholesalers (and the federal government) without requirements as to the terms and conditions of resale. These matters stand uncontroverted by the plaintiff, which does not actively oppose the motion. Under the circumstances Burroughs would have no liability to the plaintiff even if there were no governmental exemption from Robinson-Patman. See *Hiram Walker, Inc. v. A & S Tropical, Inc.*, 407 F.2d 4 (CA5 1969), *cert. denied*, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177 (1969); *A & M Stores, Inc. v. Hiram Walker, Inc.*, 427 F.2d 167 (CA5 1970). *Cf. Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).

This the 1st day of December, 1978.

/s/ Sam C. Pointer, Jr.

United States District Judge

---

**10.** The court does not here base its decision upon the "state action" doctrine as explicated in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975); and *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). That doctrine appears to be limited to situations involving a "state policy to displace competition with regulation or monopoly public service." 435 U.S. at 413, 98 S.Ct. at 1136. The rationale, however, of those decisions may well support the result here reached, where a state has declared its desire that governmental purchases be on the basis of the lowest prices available. Whether some expansion of the *Parker* principle might be allowed with respect to the state policy here involved need not be answered at this time; for, as indicated, the court has concluded as a matter of statutory construction that governmental purchases are outside the reach of the Robinson-Patman Act.